## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

-----------------------------------------------------------------

In re:           :       Chapter 11

                 :

JUNIPER GTL LLC[1]       :       Case No. 16-31959

                 :

                 :

         Debtor.       :

-----------------------------------------------------------------

## DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF GUGGENHEIM SECURITIES, LLC AS INVESTMENT BANKER FOR THE DEBTOR AND DEBTOR-IN-POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) EFFECTIVE FROM THE PETITION DATE

Juniper GTL, LLC (the "Debtor") files this application (this "Application") for the entry

of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**,

(A) authorizing the Debtor to retain and employ Guggenheim Securities, LLC ("Guggenheim"

or "Guggenheim Securities") as its investment banker pursuant to sections 327(a) and 328(a) of

title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the

Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of

Texas (the "Local Rules"), effective from the Petition Date (as defined herein) and (B) waiving

certain of the time keeping requirements as set forth below.  In support of this Application, the

Debtor submits the declaration of James D. Decker, Senior Managing Director at Guggenheim

(the "Decker Declaration"), which is attached hereto as **Exhibit B**.  In further support of the

---

[1]  The last four digits of the Debtor's federal tax identification number is 3161.  The Debtor's mailing address is 3 Riverway, Suite 1050, Houston, Texas 77056.

Application, the Debtor relies on the *Declaration of David Rush in Support of First Day Pleadings* [Docket No. 14] (the "First Day Declaration") and respectfully represents as follows:

## Relief Requested

1.     By this Application, the Debtor respectfully requests the entry of the Order (a) authorizing the Debtor to retain and employ Guggenheim as its investment banker pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and the Local Rules, from the Petition Date, pursuant to the terms and subject to the conditions of that certain engagement letter between Guggenheim Securities and the Debtor dated as of November 1, 2015, a copy of which is attached hereto as **Exhibit C** (the "Engagement Letter"), (b) waiving and modifying certain time-keeping requirements as set forth below and (c) granting related relief.  The Engagement Letter describes (i) the various services that the Debtor seeks Guggenheim to perform on its behalf during this Chapter 11 case and (ii) the terms and conditions of the proposed engagement of Guggenheim by the Debtor.

## Jurisdiction and Venue

2.     This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are Bankruptcy Code sections 327(a) 328(a), and 330(a), Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## Background

4.     On April 14, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.  The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

No request has been made for the appointment of a trustee or examiner.  No official committee has been designated or appointed.

5.      A description of the Debtor's business and the reasons for filing this Chapter 11 case are set forth in the First Day Declaration filed on the Petition Date and incorporated by reference as if fully set forth herein.

### Guggenheim's Qualifications and the Need for Guggenheim's Services

6.      The Debtor submits this Application because of its need to retain a qualified investment banker to assist it in the critical tasks associated with guiding the Debtor through this Chapter 11 case.  The Debtor believes that its retention of an investment banker is necessary and appropriate to enable it to evaluate the financial and economic issues raised by the Debtor's Chapter 11 proceedings, successfully consummate the orderly sale of substantially all of its assets and to fulfill its statutory duties.

7.      The Debtor selected Guggenheim Securities as its investment banker in this case based upon Guggenheim's extensive experience in matters involving complex financial restructurings and Guggenheim's excellent reputation for the services that it has rendered in Chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.

8.      As set forth in the Decker Declaration, Guggenheim and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Guggenheim and its professionals are providing or have provided investment banking, financial advisory and other services in connection with the following recent cases: Exide Technologies, Case No. 13-11482 (KJC)(Bankr. D. Del. 2013); Energy Future Holdings Corp., Case No. 14-

10979 (CSS)(Bankr. D. Del. 2014), <u>SIGA Technologies, Inc.</u>, Case No. 14-12623 (SHL)(Bankr. S.D.N.Y. 2014), <u>KiOR, Inc.</u>, Case No. 14-12514 (CSS)(Bankr. D. Del. 2014); In re <u>Florida Gaming Centers, Inc.</u>, Case No. 13-29597 (Bankr. S.D. Fla. 2103).

9.      Guggenheim is also familiar with the Debtor's financial and business operations. Guggenheim has been employed by the Debtor since November 2015 and has been assisting the Debtor in its efforts to market and sell it assets which is to be consummated in this Chapter 11 case. The Debtor thus believes that Guggenheim is both well-qualified and uniquely able to advise the Debtor in this Chapter 11 case in an efficient and timely manner.

<u>**Scope of Services**</u>

10.      Subject to the Court's approval, the Debtor anticipates that Guggenheim will perform the following investment banking services, among others, pursuant to the Engagement Letter:[2]

  a)  Review and analyze the Debtor's business, financial condition and prospects;

  b)  Assist the Debtor and/or participate in negotiations with the Debtor's vendors;

  c)  If the Debtor determines to undertake any Sale Transaction, Restructuring Transaction and/or any Financing Transaction, advise and assist the Debtor in structuring and effecting the financial aspects of any such Transaction or Transactions;

  d)  Assist the Debtor in developing and preparing Offering Materials (as defined in the Annex) to be used in soliciting Acquirors with respect to any Sale Transaction and assist the Debtor and/or participate in negotiations with Acquirors;

  e)  Assist the Debtor in developing and preparing Offering Materials to be used in soliciting Investors with respect to any Financing Transaction and assist

---

[2]  To the extent there is any inconsistency between the above summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control. In addition, capitalized terms not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

the Debtor and/or participate in negotiations with Investors;

f)  Provide financial advice and assistance to the Debtor in developing and
    seeking approval of any such Restructuring Transaction and assist the
    Debtor and/or participate in negotiations with any entities or groups affected
    by the Restructuring Transaction; and

g)  Participate in hearings before the Bankruptcy Court with respect to the
    matters upon which Guggenheim Securities has provided advice, including,
    as relevant, coordinating with the Debtor's legal counsel with respect to
    testimony in connection therewith.

11.     By separate motions and applications filed contemporaneously herewith or
expected to be filed shortly hereafter, the Debtor is also seeking to employ: (a) FTI Consulting,
Inc., as chief restructuring officer; (b) King & Spalding LLP, as counsel.  In addition, the
Debtor may file motions or applications to employ additional professionals.  Guggenheim will
work closely with each of these professionals to prevent unnecessary or inefficient duplication
of services, and will take whatever steps are necessary and appropriate to avoid such
duplication.

**Professional Compensation**

12.     As set forth more fully in the Engagement Letter, Guggenheim and the Debtor
have agreed on the following terms of compensation and expense reimbursement (the "Fee and
Expense Structure"):[3]

> **Monthly Fee.**  A monthly fee (the "Monthly Fee") equal to $150,000 payable
> on the 1st day of each month.
>
> **Sale Transaction Fee.**  Upon the consummation of any Sale Transaction, a fee
> (a "Sale Transaction Fee") equal to 3.5% of the Aggregate Sale Consideration.
> Notwithstanding the foregoing and notwithstanding the Minimum Transaction
> Fee (as defined below), if Westlake GTL LLC and Richard Construction, Inc.,
> together as the purchaser, or their respective designees (collectively, the

---

[3]   Except with respect to the second sentence of the description of the Sale Transaction Fee and the
second sentence of the description of the Financing Fee above, to the extent there is any inconsistency
between the summary of the Fee and Expense Structure set forth in this Application and the Fee and
Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall
control.

"Stalking Horse Purchaser") is the Court-approved stalking horse and successful bidder and purchaser in connection with any Sale Transaction, then the Sale Transaction Fee payable to Guggenheim upon the consummation of any such Sale Transaction shall be $1,150,000.00 reduced by the aggregate amount of the first two Monthly Fees actually paid to Guggenheim after the Petition Date.

**Financing Fee.**  Upon the consummation of any Financing Transaction, a fee (a "Financing Fee") in an amount equal to the sum of (a) 2.0% of the aggregate face amount of any new debt obligations issued that is secured by a first lien, plus (b) 4.0% of the aggregate face amount of any new debt obligations that is secured by a second or more junior lien, plus (c) 6.0% of the aggregate amount or stated value of any new capital issued or raised by the Debtor in any Equity Financing.  Notwithstanding the foregoing, upon the consummation of any debtor-in-possession financing ("DIP Financing"), Guggenheim's fee for any such DIP Financing shall be $250,000.00; provided, however, no fee shall be payable on account of that certain DIP Financing provided by Westlake GTL LLC pursuant to that certain Debtor-in-Possession Loan and Security Agreement dated April 14, 2016. Except for any DIP Financing, the minimum amount of any Financing Fee shall be $500,000.00.  In addition, fifty percent of the first Financing Fee paid to Guggenheim shall be credited once against the aggregate of any Restructuring Transaction Fee and Sale Transaction Fee.

**Restructuring Fee.**  Upon the consummation of any Restructuring Transaction, a fee (the "Restructuring Transaction Fee") equal to 3.5% of the Aggregate Restructuring Value; provided, however, an additional 4.0% fee shall be paid on the incremental portion of the Enterprise Value in excess of $125 million which result in an equity funding of the Company.

Notwithstanding the foregoing, if substantially all of the Debtor's assets are sold to a third party under a sale authorized under Section 363 of the Bankruptcy Code ("363 Sale") and Guggenheim is either paid or entitled to be paid a Sale Transaction Fee on account of such 363 Sale, then Guggenheim shall not be entitled to a fee for the proposal of, or consummation of, a liquidating plan filed and approved in this case unless the Debtor asks and Guggenheim Securities provides material investment banking services in connection with such plan that are unrelated to the 363 Sale.  The Engagement Letter also provides for a minimum transaction fee amount in the amount of $1,750,000.00 (the "Minimum Transaction Fee").

13.      In addition to any fees that may be paid to Guggenheim under the Engagement Letter, the Debtor shall reimburse Guggenheim for out-of-pocket expenses incurred in

connection with its engagement by the Debtor provided that individual expense items shall not exceed $5,000 without the Debtor's written approval which shall not be unreasonably withheld.

14.     During the pendency of this Chapter 11 case, Guggenheim shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

15.     The Debtor believes that the Fee and Expense Structure set forth in the Engagement Letter is reasonable.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Guggenheim and the fee structures typically utilized by leading investment banking firms of similar stature to Guggenheim for comparable engagements, both in and out of court.  The Fee and Expense structure is consistent with Guggenheim's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  Moreover, the Fee and Expense Structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Guggenheim's substantial experience with respect to investment banking services, and (d) the nature and scope of work to be performed by Guggenheim in this case.  In particular, the Debtor believes that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees. Similar fixed and contingency fee arrangements have been approved and implemented in other recent large Chapter 11 cases.  See, e.g., Exide Technologies, Case No. 13-11482 (KJC)(Bankr. D. Del. 2013); Energy Future Holdings Corp., Case No. 14-10979 (CSS)(Bankr. D. Del. 2014).

16.     Consistent with its ordinary practice and the practice of investment bankers in other Chapter 11 cases whose fee arrangements are not hours-based, Guggenheim does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Given the foregoing and that Guggenheim's compensation is based on fixed fees, the Debtor requests that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the submission and approval of fee applications, Guggenheim's professionals be excused from maintaining time records in connection with the services to be rendered pursuant to the Engagement Letter.  Guggenheim will nonetheless maintain reasonably detailed summary time records in one-half hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.  Courts in other large Chapter 11 cases have excused flat-fee professionals from time-keeping requirements under similar circumstances.  See, e.g., In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. June 14, 2013) (requiring investment banker only to keep reasonably detailed summary time records in one-half hour increments while indicating the total hours incurred by each professional for each day and briefly describing the nature of the work performed); SIGA Technologies, Inc., Case No. 14-12623 (SHL)(Bankr. S.D.N.Y. 2014), KiOR, Inc., Case No. 14-12514 (CSS)(Bankr. D. Del. 2014).

**Indemnification of Guggenheim**

17.     As part of the overall compensation payable to Guggenheim under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to Guggenheim and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other controlling persons, to the fullest

8

extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses, as incurred, related to or arising out of or in connection with Guggenheim's services under the Engagement Letter.[4]  Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Guggenheim in Chapter 11 cases.  Exide Technologies, Case No. 13-11482 (KJC)(Bankr. D. Del. 2013); Energy Future Holdings Corp., Case No. 14-10979 (CSS)(Bankr. D. Del. 2014), SIGA Technologies, Inc., Case No. 14-12623 (SHL)(Bankr. S.D.N.Y. 2014), KiOR, Inc., Case No. 14-12514 (CSS)(Bankr. D. Del. 2014); In re Florida Gaming Centers, Inc., Case No. 13-29597 (Bankr. S.D. Fla. 2103).

### Guggenheim's Disinterestedness

18.      Guggenheim has informed the Debtor that as of the date hereof, except as set forth in the Decker Declaration, (a) Guggenheim has no connection with the Debtor, its creditors, equity security holders or other parties in interest in this Chapter 11 case; (b) Guggenheim does not have or represent any entity having an interest adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders; and (c) Guggenheim (i) is not a creditor, equity security holder or an insider of the Debtor and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtor.  In addition, none of the Guggenheim professionals expected to assist the Debtor in this Chapter 11 case are related or connected to any United States Bankruptcy Judge for the Southern District of Texas, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

---

[4]   To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in the Indemnification Provisions annexed to the Engagement Letter, the terms of such Indemnification Provisions and the Engagement Letter shall control.

19.     During the 90 day period prior to the commencement of this case, Guggenheim was paid in the ordinary course certain Monthly Fees and expense reimbursements. Specifically, Guggenheim was paid:  (i) $159,902.97 on account of its January 2016 Monthly Fee and related expenses reimbursement on January 21, 2016; (ii) $153,144.42 on account of its February 2016 Monthly Fee and related expenses reimbursement on February 12, 2016; (iii) $77,969.74, $38,433.91 and $37,568.26 on account of its March 2016 Monthly Fee and related expense reimbursements on March 11, 17 and 25, 2016, respectively; and (iv) $37,500 on account of the first week of its April's Monthly Fee on April 5, 2016.  To the extent that any other amounts remained due as of the Petition Date, Guggenheim has agreed to waive such amounts upon the approval of its engagement by the Debtor.

20.     The Debtor has been advised that Guggenheim has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with this Chapter 11 case in accordance with section 504(a) of the Bankruptcy Code.

21.     Based on the foregoing, the Debtor believes that Guggenheim is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

## Basis for Relief Requested

22.     Bankruptcy Code section 327(a) provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

23.     Additionally, pursuant to Bankruptcy Code section 328(a), the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).   Furthermore, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

24.     The Debtor submits that for all the reasons stated above and in the Decker Declaration, the retention and employment of Guggenheim as investment banker to the Debtor is warranted.  Also, given the numerous issues that Guggenheim may be required to address in performing its services for the Debtor pursuant to the Engagement Letter, Guggenheim's commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Guggenheim's services for engagements of this nature, the Debtor submits that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtor also believes that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Guggenheim's services, (b) Guggenheim's substantial experience with respect to investment banking services and (c) the fee structures typically utilized by Guggenheim and

other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

26.     Further, as stated in the Decker Declaration, Guggenheim is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtor's estate and has no connection to the Debtor, its creditors, or other parties in interest, except as disclosed in the Decker Declaration.

26.     Based on the foregoing, the Debtor submits that the relief requested is appropriate.

**<u>NOTICE</u>**

27.     Notice of this Application has been provided to: (i) the U.S. Trustee, (ii) counsel for the Debtor's DIP lenders, (iii) the Debtor's twenty (20) largest unsecured creditors, and (iv) all parties entitled to notice pursuant to Local Rule 9013-1(e).  Due to the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor requests this Court (a) enter the Order, substantially in the form of Exhibit A, granting the relief requested in this Application and (b) grant such other and further relief as the Court may deem just, proper, and equitable.

Date:   April 15, 2016
       Houston, Texas

                              David Rush
                              Chief Restructuring Officer
                              Juniper GTL, LLC

**EXHIBIT A**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------------
                          :

In re:                            :      Chapter 11

                            :      Case No. 16-16-31959

JUNIPER GTL LLC[1]          :

                            :

                  Debtor.     :
---------------------------------------------------------------

**ORDER AUTHORIZING THE DEBTOR TO RETAIN AND EMPLOY
GUGGENHEIM SECURITIES, LLC AS INVESTMENT BANKER PURSUANT TO
11 U.S.C. §§ 327(a) AND 328(a) EFFECTIVE FROM THE PETITION DATE**

Upon consideration of the *Application for Entry of an Order Authorizing the*

*Employment and Retention of Guggenheim Securities, LLC as Investment Banker for the*

*Debtor and Debtor-in-Possession Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Effective From*

*the Petition Date* (the "Application")[2] of the above-captioned Debtor for entry of an Order

authorizing the Debtor to employ and retain Guggenheim Securities, LLC ("Guggenheim") as

its investment banker effective from the Petition Date, pursuant to Bankruptcy Code sections

327(a), 328(a), and 330, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and

2016-1; and the Court having jurisdiction to consider the Application and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being

---

[1] The last four digits of the Debtor's federal tax identification number is 3161. The Debtor's mailing address is 3 Riverway, Suite 1050, Houston, Texas 77056.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtor has provided appropriate notice of the Application and the opportunity for a hearing on the Application under the circumstances and no other or further notice need be provided; and the Court having reviewed the Application and the Decker Declaration; the Court being satisfied based on the representations made in the Application and the Decker Declaration that (a) Guggenheim does not hold or represent an interest adverse to the Debtor's estate and (b) Guggenheim is a "disinterested person" as defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as required by Bankruptcy Code section 327(a); and the Court having found that the relief requested in the Application is in the best interests of the Debtor's estate, its creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court; and good, adequate and sufficient cause has been shown to justify the immediate entry of this Order; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED:

1. The Application is approved to the extent set forth herein.

2. The Debtor is authorized to retain and employ Guggenheim as its investment banker in this Chapter 11 case, pursuant to the terms and subject to the conditions set forth in the Engagement Letter, effective from the Petition Date.

3. Except to the extent set forth herein, the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and the Debtor is authorized to pay, reimburse, and indemnify Guggenheim

in accordance with the terms and conditions of, and at the times specified in, the Engagement Letter.

4.      Guggenheim shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules or Local Bankruptcy Rules as may then be applicable, and any other applicable orders and procedures of this Court; *provided, however*, that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Appendix to the Procedures Manual, any order of this Court, or any other guideline regarding the submission and approval of fee applications, Guggenheim's professionals shall be required only to keep reasonably detailed summary time records in one-half hour increments, which time records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.

5.      The fees and expenses payable to Guggenheim pursuant to the Engagement Letter shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee, who, for the avoidance of doubt, shall retain all rights to respond or object to Guggenheim's interim and final applications on all grounds, including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code.

6.      Notwithstanding anything to the contrary in the Engagement Letter or Application, no Financing Fee shall be payable on account of that certain DIP Financing provided by Westlake GTL LLC pursuant to that certain Debtor-in-Possession Loan and Security Agreement dated April 14, 2016.

7.       Notwithstanding anything to the contrary in the Engagement Letter or Application, if Westlake GTL LLC and Richard Construction, Inc., together as the purchaser, or their respective designees (collectively, the "Stalking Horse Purchaser") is the Court-approved stalking horse and successful bidder and purchaser in connection with any Sale Transaction, then the Sale Transaction Fee payable to Guggenheim upon the consummation of any such Sale Transaction shall be $1,150,000.00 reduced by the aggregate amount of the first two Monthly Fees actually paid to Guggenheim after the Petition Date.

8.       An amount equal to any Sale Transaction Fee due to Guggenheim as a result of the closing of any Sale Transaction shall be segregated from the proceeds of such Sale Transaction prior to any other use or distribution of such proceeds and shall be held for the sole benefit of Guggenheim Securities and the payment of any such Sale Transaction Fee upon its allowance by the Court.  If any Sale Transaction is the result of a successful credit bid without a cash component sufficient to pay any such Sale Transaction Fee in full, then any resulting unpaid portion of the Sale Transaction Fee due to Guggenheim shall be segregated at the closing of such Sale Transaction from available cash of the Debtor and such amount shall be held for the sole benefit of Guggenheim Securities and the payment of any such Sale Transaction Fee upon its allowance by the Court; provided, however, if the Debtor does not have sufficient cash to pay the unpaid portion of such Sale Transaction Fee in full, or any portion thereof, then the successful credit bidder shall pay the unpaid portion of such Sale Transaction Fee to the Debtor at the closing of such Sale Transaction and the Debtor shall segregate and hold such amount for the sole benefit of Guggenheim Securities and the payment of any such Sale Transaction Fee upon its allowance by the Court.

9. The indemnification, contribution and reimbursement provisions included in the Indemnification Provisions annexed to the Engagement Letter are approved, subject during the pendency of this Chapter 11 case to the following modifications:

a. subject to the provisions of subparagraphs (b) and (c) below, the Debtor is authorized to indemnify the indemnified persons in accordance with the Engagement Letter for any claim arising from, related to, or in connection with their performance of the services described in the Engagement Letter; provided, however, that the indemnified persons shall not be indemnified for any claim arising from services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

b. notwithstanding anything to the contrary in the Engagement Letter, the Debtor shall have no obligation to indemnify any person or provide contribution or reimbursement to any person for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from that person's gross negligence or willful misconduct, or (ii) for a contractual dispute in which the Debtor allege breach of Guggenheim's obligations under the Engagement Letter unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003) or (iii) settled prior to a judicial determination as to sub-clauses (i) or (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

c. if, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in this Chapter 11 case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing this Chapter 11 case, Guggenheim believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Guggenheim must file an application before this Court and the Debtor may not pay any such amounts before the entry of an order by this Court approving the payment; provided, however, that for the avoidance of doubt, this subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement and not a

5

provision limiting the duration of the Debtor's obligation to indemnify Guggenheim.

10.     To the extent that there may be any inconsistency between the terms of the Application, the Decker Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

11.     The Debtor and Guggenheim are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

12.     Notice of this Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to interpretation, implementation or enforcement of this Order.

Dated: May ___, 2016
        Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Decker Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------------

In re:                               :       Chapter 11

                                     :

JUNIPER GTL LLC[1]             :       Case No. 16-16-31959

                                     :

                                   :

                Debtor.         :

---------------------------------------------------------------

**DECLARATION OF JAMES D. DECKER IN SUPPORT OF DEBTOR'S
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF GUGGENHEIM SECURITIES, LLC AS INVESTMENT
BANKER FOR THE DEBTOR AND DEBTOR-IN-POSSESSION PURSUANT TO 11
U.S.C. §§ 327(a) AND 328(a) EFFECTIVE FROM THE PETITION DATE**

        I, JAMES D. DECKER, hereby state and declare as follows:

        1.        I am a Senior Managing Director at Guggenheim Securities, LLC ("Guggenheim

Securities"), an investment banking and financial advisory firm with principal offices located at

330 Madison Avenue, New York, New York 10017, as well as at other locations worldwide.

This Declaration is submitted in support of the application (the "Application")[2] of the above-

captioned debtor (the "Debtor") for entry of an order approving the Debtor's employment and

retention of Guggenheim Securities as its investment banker effective from the Petition Date,

pursuant to Bankruptcy Code sections 327(a) and 328(a).

        2.        Except as otherwise stated in this Declaration, I have personal knowledge of or

have relied upon the knowledge of others employed by Guggenheim Securities with respect to

---

[1]  The last four digits of the Debtor's federal tax identification number is 3161.  The Debtor's mailing
address is 3 Riverway, Suite 1050, Houston, Texas 77056.

[2]  Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the
Application.

the matters set forth herein.[3] If called to testify, I could and would testify competently to the facts set forth herein.

3.      Guggenheim Securities has agreed to provide financial advisory and investment banking services to the Debtor in the above-captioned Chapter 11 case pursuant to the terms and conditions set forth in that certain engagement letter and attached annexes between the Debtor and Guggenheim Securities dated as of November 1, 2015 (the "Engagement Letter"), a true and correct copy of which is attached to the Application as Exhibit C.

4.      I believe that Guggenheim Securities and the professionals that it employs are uniquely qualified to advise the Debtor in the matters for which Guggenheim Securities is proposed to be employed.  Guggenheim Securities is a subsidiary of Guggenheim Partners, LLC ("Guggenheim Partners"), a global financial services firm.  Guggenheim Securities provides a broad range of advisory services to its clients, including investment banking, securities brokerage and other financial advisory services.  The investment banking and financial advisory professionals employed by Guggenheim Securities have been advising clients around the world for more than twenty (20) years.

5.      In connection with its retention by the Debtor, Guggenheim Securities researched its client database to determine whether Guggenheim Securities had any relationships with the classes of entities identified by the Debtor as potential parties-in-interest (the "Potential Parties in Interest").  A list of the Potential Parties in Interest is attached hereto as Schedule 1. Specifically, Guggenheim Securities (i) entered the names of the Potential Parties in Interest into a computer database containing its financial advisory and investment banking engagements since July 2010 (each a "Client," and, collectively, the "Clients"), (ii) compared the names of all

---

[3]  Certain information set forth herein relates to matters (i) contained in Guggenheim Securities' books and records and (ii) within the knowledge of other Guggenheim Securities' employees, and is based on information provided by them.

Potential Parties in Interest to lists of companies for which Guggenheim Securities publishes research reports or makes a market in the company's securities, and (iii) compared the names of the Potential Parties in Interest to a list of vendors to Guggenheim Securities (each a "Vendor," and, collectively, the "Vendors").

6.      To the extent that the inquiry in subsection (i) above revealed that certain of the Potential Parties in Interest were current or former Clients of Guggenheim Securities' investment banking department (the "Investment Banking Department"), these parties were identified on a list (the "Client Match List") attached hereto as Schedule 2.  To the extent that the inquiries in subsections (ii) and (iii) above revealed that certain of the Potential Parties in Interest were Vendors, or that Guggenheim Securities publishes research reports on the company or makes a market in the company's securities, these parties were identified in a list attached hereto as Schedule 3.  Through the information generated from the aforementioned inquiries, Guggenheim Securities determined that the matters identified on Schedule 2 and Schedule 3 hereto all concern matters unrelated to the Debtor.  The nature of the connections identified on Schedule 2 and Schedule 3 is explained in such schedules.  Guggenheim Securities will not advise any entity other than the Debtor in matters related to this Chapter 11 case.

7.      To the best of my knowledge, information, and belief, neither Guggenheim Securities nor any employees of Guggenheim Securities is, or was within two years before the commencement of this Chapter 11 case, a director, an officer, or an employee of the Debtor. Also, to the best of my knowledge, information, and belief, neither the undersigned nor the Guggenheim Securities professionals expected to assist the Debtor are connected to the United States Bankruptcy Judge presiding over this Chapter 11 case or any persons employed by the Office of the United States Trustee for the Southern District of Texas.

8.      Given the breadth of Guggenheim Securities' client and customer base, it is possible that Guggenheim Securities may have business relationships with certain of the professionals involved in this Chapter 11 case.  Guggenheim Securities is involved in numerous cases, matters, and transactions involving many different professionals, accountants, and financial consultants, some of whom may represent claimants and parties in interest in this Chapter 11 case.  Further, Guggenheim Securities may have in the past, and may in the future, be represented by or advised several attorneys and law firms in the legal community, some of whom may be involved in this Chapter 11 case.  Finally, Guggenheim Securities has in the past, and may in the future, work with or against other professionals involved in this case in matters wholly unrelated to this Chapter 11 case.  Based upon our current knowledge of the professionals involved in this Chapter 11 case, and to the best of my knowledge, none of these business relationships constitute interests adverse to the estates in matters with respect to which Guggenheim Securities is to be employed, and none are in connection with this case.

9.      As noted above, Guggenheim Securities provides a broad range of services to its clients.  Guggenheim Securities' financial advisory and investment banking services are provided through the Investment Banking Department.  The services to be provided to the Debtor under the Engagement Letter will be provided only by Guggenheim Securities' Investment Banking Department personnel and certain other non-Investment Banking Department personnel who may from time to time be needed to assist the Investment Banking Department during the course of this engagement.  Information walls exist between Guggenheim Securities' Investment Banking Department and the remainder of Guggenheim Securities (including the fixed income and equity departments of Guggenheim Securities (collectively, the "Sales and Trading Department")), Guggenheim Partners and its affiliates.  These information

4

walls include physical and technological barriers, compliance and surveillance mechanisms and policies and procedures designed to prevent confidential information from being shared improperly.  In the event that the Investment Banking Department needs the assistance of any non-Investment Banking Department personnel during the course of this engagement, such non-Investment Banking Department personnel would be brought within the Investment Banking Department's information barrier group, pursuant to certain procedures designed to maintain the effectiveness of the information barrier.

10.      As of the date hereof, Guggenheim Securities and its affiliates have approximately 2,500 employees worldwide.  It is possible that certain of Guggenheim Securities' and its affiliates' respective directors, officers, and employees may have had in the past, may currently have, or may in the future have connections to (i) the Debtor, (ii) Potential Parties in Interest in this Chapter 11 case, or (iii) funds or other investment vehicles that may own debt or securities of the Debtor or other Potential Parties in Interest.  To the best of my knowledge, and except as otherwise disclosed herein, Guggenheim Securities' professionals that will be responsible for this engagement do not have any material business associations with, or hold any material interests in or adverse to, the Debtor or Potential Parties in Interest in this Chapter 11 case.  Such professionals, however, may personally own and/or continue to own securities or other interests or investments in various of the Potential Parties in Interest (all unrelated to the Debtor and this Chapter 11 case).

11.      As noted above, the Sales and Trading Department provides certain securities brokerage services and regularly enters into transactions in securities, loans and other financial instruments with or involving other parties as a part of such department's daily activities.  These transactions are generally for the accounts of customers of the Sales and Trading Department,

but may include principal transactions to acquire or sell securities for inventory purposes to facilitate Guggenheim Securities' market-making business.  Guggenheim Securities does not engage in proprietary trading in securities, loans or other financial instruments for its own account.  The Sales and Trading Department, however, has hundreds of customers and certain of its customers may include, or be related to, Potential Parties in Interest in this Chapter 11 case.  The Debtor, however, is not a customer of Guggenheim Securities.  Customers may, through the Sales and Trading Department of Guggenheim Securities, buy, sell or otherwise effect transactions in securities of the Debtor or other Potential Parties in Interest with Guggenheim Securities acting solely as agent to such clients.  As a result, the Sales and Trading Department may, directly or indirectly, hold long or short positions, trade or otherwise conduct such activities in or with respect to debt or equity securities, or derivative products relating to the Debtor or the Potential Parties in Interest for the accounts of its customers.  Further, as a market-maker in equity securities, Guggenheim Securities enters into securities transactions with other registered broker-dealers as part of its daily activities.  Some of these parties and counterparties may hold a claim or otherwise be a party-in-interest in this Chapter 11 case.  Guggenheim Securities believes that none of these business relationships constitute interests adverse to the Debtor and none are in connection with this Chapter 11 case.

12.     Additionally, certain affiliates of Guggenheim Securities (the "Investment Advisor Affiliates") serve as managers for a number of funds and other investment vehicles (the "Managed Funds").  The Managed Funds are intended principally for investments by third parties unrelated to Guggenheim Securities.  However, such investors may also include financial institutions (some of which may be parties in interest in this Chapter 11 case), or affiliates of Guggenheim Securities and various of its directors, officers and employees (some of which may

6

include Guggenheim Securities' employees providing services in connection with this Chapter 11 case). Guggenheim Securities' employees providing services in connection with this Chapter 11 case have no control over investment decisions or business decisions made for the Managed Funds. With respect to these Managed Funds, Guggenheim Securities makes the following additional disclosures:

a) Among other things, the Managed Funds are (i) active investors in a number of portfolio companies (the "Equity Investments"), (ii) investors in a variety of debt instruments and mezzanine loans or similar securities (the "Debt Investments" and together with the Equity Investments, the "Fund Investments"); and

b) The Guggenheim portfolio managers with fund management responsibilities for the Managed Funds maintain investment discretion and control over investment decisions with respect to the Fund Investments unless such investment discretion is outsourced to a third-party fund manager unrelated to Guggenheim Partners. Many financial institutions and parties in interest who may be involved in this Chapter 11 case may also be investors in the Managed Funds. Moreover the Managed Funds may invest from time to time in Fund Investments of or relating to the Debtor or parties in interest in this Chapter 11 case. In order to comply with securities laws, and to avoid any appearance of impropriety, the employees of the Managed Funds are strictly separated from the employees of Guggenheim Securities, including Guggenheim Securities' professionals expected to provide services to the Debtor, by an information wall, as described in Paragraph 9 above. Consequently, as no confidential information is permitted to be communicated to or received from any Investment Advisor Affiliate by the Guggenheim Securities Investment Banking Department, Guggenheim Securities does not believe that the relationships outlined above constitute adverse interests or render Guggenheim Securities not disinterested in this Chapter 11 case.

13.     Guggenheim Securities also has an affiliate that provides funding solutions for financial institutions as the manager of a series of debt programs (the "Institutional Finance Group"). Many financial institutions and parties in interest who may be involved in this Chapter 11 case may also be clients of the Institutional Finance Group and /or investors in one or more of the Institutional Finance Group's debt programs. Additionally, certain affiliates of Guggenheim Securities are insurance companies that may invest in securities or other financial instruments for

their own account (the "Insurance Company Affiliates").  The Insurance Company Affiliates

may also retain the services of investment advisors to manage their investment portfolios, which

may then invest on behalf of the relevant Insurance Company Affiliate for its account.  Such

investments may from time to time include securities or other financial instruments of or relating

to the Debtor or parties in interest in this Chapter 11 case.  In order to comply with securities

laws, and to avoid any appearance of impropriety, the employees of the Institutional Finance

Group and the Insurance Company Affiliates are strictly separated from the employees of

Guggenheim Securities, including Guggenheim Securities' professionals expected to provide

services to the Debtor, by an information wall, as described in Paragraph 9 above.  Guggenheim

Securities does not believe that the relationships outlined above constitute interests adverse to the

Debtor in matters with respect to which Guggenheim Securities is to be employed, and none are

in connection with this case.

   14.     Guggenheim Securities also has a research department that publishes equity

research (the "Equity Research Department").  Consistent with applicable legal and regulatory

requirements, Guggenheim Securities has adopted policies, procedures, and information barriers

to maintain the independence of the Equity Research Department's personnel.  During the course

of this case, Guggenheim Securities' research analysts may hold views, make statements or

investment recommendations, or publish research reports with respect to the Debtor or other

Potential Parties in Interest.  Such views may or may not differ from the views of Guggenheim

Securities' Investment Banking Department personnel.

   15.     The Debtor has numerous creditors and relationships with various individuals and

entities that may be parties in interest in this case.  Consequently, although every reasonable

effort has been made to discover and eliminate the possibility of any conflict, including the

efforts outlined above, Guggenheim Securities is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party in interest in this Chapter 11 case.  Additionally, Guggenheim Securities may be involved in litigation from time to time that may, or may in the future, involve entities that may be parties in interest in this case. If Guggenheim Securities discovers any information that is contrary to or pertinent to the statements made herein, Guggenheim Securities will promptly disclose such information to the Court.

16.     During the 90 day period prior to the commencement of this case, Guggenheim was paid in the ordinary course certain Monthly Fees and expense reimbursements.  Specifically, Guggenheim was paid:  (i) $159,902.97 on account of its January 2016 Monthly Fee and related expenses reimbursement on January 21, 2016; (ii) $153,144.42 on account of its February 2016 Monthly Fee and related expenses reimbursement on February 12, 2016; (iii) $77,969.74, $38,433.91 and $37,568.26 on account of its March 2016 Monthly Fee and related expense reimbursements on March 11, 17 and 25, 2016, respectively; and (iv) $37,500 on account of the first week of its April's Monthly Fee on April 5, 2016.  To the extent that any other amounts remained due as of the Petition Date, Guggenheim has agreed to waive such amounts upon the approval of its engagement by the Debtor.

17.     The Fee and Expense Structure set forth in the Application is consistent with Guggenheim' typical fee for work of this nature.  The fees are set at a level designed to compensate Guggenheim fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses.  It is Guggenheim' policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

18.     It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.  Guggenheim' restructuring professionals, when formally retained in Chapter 11 cases, and when required by local rules, do, and in these cases will, keep time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks.  Guggenheim will also supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice, keep records in the same manner.

19.     The Fee and Expense Structure is comparable to those generally charged by investment banking firms of similar stature to Guggenheim and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of a transaction as contemplated in the Engagement Letter.

20.     The Engagement Letter was negotiated at arm's length and in good faith, and I believe that the provisions contained therein are reasonable terms and conditions of Guggenheim' employment by the Debtor.  With respect to the Engagement Letter's indemnification provisions, unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for investment bankers.  The indemnity, moreover, is comparable to those generally obtained by investment banking firms of similar stature to Guggenheim and for comparable engagements, both in and out of court.

21.     Other than as set forth above, there is no proposed arrangement between the Debtor and Guggenheim for compensation to be paid in this case.  Guggenheim has no

agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

22.     The foregoing constitutes the statement of Guggenheim pursuant to section 504 of the Bankruptcy Code, and Bankruptcy Rules 2014(a) and 5002.

*Signature Page Follows*

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: April 15, 2016

**GUGGENHEIM SECURITIES, LLC**

*/s/ James D. Decker*

James D. Decker
Senior Managing Director

## Schedule 1

### List of Potential Parties in Interest

**Debtor & Non-Debtor Affiliates**
Juniper GTL LLC

**Current Officers & Directors**
David Rush
Michael Bui

**Former Officers & Directors**
Todd A. Joyner
Miguel Martin
Deborah D. Shelton
Vianney Vales

**Professionals**
Ernst & Young LLP
FTI Consulting, Inc.
Guggenheim Partners, LLC
King & Spalding LLP
Kean Miller LLP
L.B. Walker & Associates, Inc.

**Certain Equity Holders**
Calumet Specialty Products, L.P.
Clean Fuels North America, LLC
Great Northern Project Development, LLC
New Source Fuels, LLC
SGC Energia Co, LLC

**Lienholders**
American Tank and Vessel, Inc.
Apache Industrial Services
Clay & Domingue, LLC
Custom Metal Fabricators, Inc.
ParFab Field Services, LLC
Richard Construction, Inc.
Smith Tank & Equipment Company
Wastewater Specialties, LLC
Wesco Distribution, Inc.
Wholesale Electric Supply Co.

**DIP Lender**
Westlake GTL LLC
Richard Construction, Inc.
 *

**Depository Banks**
JPMorgan Chase Bank, N.A.

**Top 20 Unsecured Creditors**
Richard Design Services, Inc.
J.P Morgan Ventures Energy Corporation
Heatec, Inc
York International, Johnson Controls
SPX Cooling Technologies
Yokogawa Corporation of America
Pinnacle Industries Ltd
Layne Christensen Company
Smithco Engineering Inc.
Revak Engineering
Linde Engineering North America
Shroff & Associates (Engineers) Pvt. Ltd.
Pyramid Instrumentation & Electrical Corporation
FSE Energy
Levingston Group
Accutrol, LLC
Thermal Engineering International Inc.

---

\* Certain parties listed herein have been redacted to comply with the Debtor's confidentiality obligations. An unredacted copy of the Parties in Interest List will be provided to the Court upon request.

US Metals Inc.
Schutte & Koerting
Versa Integrity Group

Richard Design Services, Inc.
Richard Industrial Group

**Insurers**
AIG Specialty Insurance Company
AXIS Surplus Insurance Company
First Mercury Insurance Company
Illinois Union Insurance Company
Ironshore Specialty Insurance Company
Liberty Mutual Insurance Company
Lexington Insurance Company
Louisiana Workers' Compensation
     Corporation
RSUI Indemnity Company
Starr Surplus Lines Insurance Company
Zurich American Insurance Company

**Employee Benefit Providers**
AFLAC
Blue Cross/Blue Shield of Louisiana
John Hancock
Netchex
Reliance Standard

**Utilities**
Entergy Louisiana, LLC
AT&T

**Contract Counterparties**
Alpha Wax USA Corporation
Arthur J. Gallagher Brokerage & Risk
     Management Services, LLC
Calumet Lubricants Co., Limited
     Partnership
Clay & Domingue, LLC
Emerging Fuels Technology, Inc.
Linde Engineering North America
Matrix Service Inc.
Macquarie Bank Limited
ParFab Field Services, LLC
RB Products Inc.

**Schedule 2**

The following are Potential Parties in Interest that are current or former Clients of Guggenheim Securities' Investment Banking Department:

| Party | Relationship |
|-------|--------------|
| None | N/A |

In addition, the following are Potential Parties in Interest that are current or former Clients of Guggenheim Securities' non-Investment Banking Department:

| Party | Relationship |
|-------|--------------|
| Canaccord Genuity Inc. | Current or former Client of Sales and Trading Department. |
| JPMorgan Chase Bank, N.A. | Current or former Client of Sales and Trading Department. |
| Liberty Mutual Insurance Company | Current or former Client of Sales and Trading Department. |
| AFLAC | Current or former Client of Sales and Trading Department. |
| John Hancock | Current or former Client of Sales and Trading Department. |

Also, Guggenheim Securities, its affiliates and/or employees hold de minimis positions (less than 1%) in the following Potential Parties in Interest:

FTI Consulting, Inc.
Calumet Specialty Products, L.P.
Repsol SA
JPMorgan Chase Bank, N.A.
Layne Christensen Company
Ironshore Specialty Insurance Company
Liberty Mutual Insurance Company
Zurich American Insurance Company
AFLAC
John Hancock and Various Hancock Funds
Reliance Standard
Entergy Louisiana, LLC
AT&T
Arthur J. Gallagher Brokerage & Risk Management Services, LLC
Entergy Gulf States Louisiana
Praxair, Inc.

## Schedule 3

The following Vendors to Guggenheim Securities are Potential Parties in Interest:

| Party | Relationship |
|---|---|
| Ernst & Young | A party that provides products or services unrelated to these cases. |

The following are Potential Parties in Interest on which Guggenheim Securities publishes research reports:

| Party | Relationship |
|---|---|
| Entergy Corp. | Guggenheim Securities publishes research on Entergy Corp. |
| JPMorgan Chase & Co. | Guggenheim Securities publishes research on JPMorgan Chase & Co. |