


ENTERED
04/19/2016

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

-----------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| | Case No. 16-31959 |
| JUNIPER GTL LLC[1] | |
| | |
| | |
| Debtor. | |

-----------------------------------------------------------------

**INTERIM ORDER (I) APPROVING DEBTOR-IN-POSSESSION
FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 362, 364, AND 507 AND
FED. R. BANKR. P. 2002, 4001 AND 9014 AND BANKRUPTCY
LOCAL RULE 4001-1; (II) AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO11 U.S.C. §§ 105, 361, 362 AND 363 OF THE BANKRUPTCY
CODE; (III) GRANTING SUPERPRIORITY ADMINISTRATIVE CLAIMS;
(IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**
[Relates to Docket No. 3]

Came on for hearing the motion (the "Motion") of Juniper GTL LLC, the debtor-in-possession (the "Debtor") in the above-captioned Case (the "Case"), pursuant to sections 105(a), 361, 362, 363, 364(c), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), the Procedures for Complex Chapter 11 Bankruptcy Cases for the Southern District of Texas (the "Complex Chapter 11 Procedures"), and the Uniform Texas Rules for Complex Chapter 11 Bankruptcy Cases (the "Uniform Rules") seeking, among other things:

---

[1] The last four digits of the Debtor's federal tax identification number is 3161. The Debtor's mailing address is 3 Riverway, Suite 1050, Houston, Texas 77056.

A.      Authorization and approval for the Debtor to obtain post-petition financing on an interim basis up to the aggregate principal amount of not more than $1,200,000.00 (the "Interim Amount Limit"), on the terms and conditions set forth in (a) the Debtor-in-Possession Loan and Security Agreement dated April 12, 2016 (the "DIP Credit Agreement"),[2] among the Debtor, as borrower, and Westlake GTL LLC, as lender (the "DIP Lender"), attached as Exhibit A to the Motion, and (b) all such financing statements, mortgages, deeds of trust, deeds to secure debt, pledge agreements, affidavits, security agreements, fixture filings, assignments, memoranda or other documents, instruments or evidences of perfection with respect to the Collateral (as defined below) as the DIP Lender may from time to time deem appropriate (collectively the "Security Documents", together with the DIP Credit Agreement, Security Documents, the Lock-Up Agreement, and all other agreements, documents and instruments related or connected to the DIP Credit Agreement, all as the same may from time to time be amended, modified, extended or renewed from time to time,  collectively, the "DIP Loan Documents");

B.      Authorization, pursuant to section 364(c)(2) of the Bankruptcy Code, that the Obligations and the Liens against the Collateral securing the Obligations shall, other than with respect to the Excluded Assets, constitute perfected first priority Liens on all Collateral that is not subject to an existing Lien on the Petition Date, including, without limitation, all cash advanced as DIP Loans and all products and proceeds of the DIP Loans;

C.      Authorization, pursuant to section 364(c)(3) of the Bankruptcy Code, that the Obligations shall constitute perfected Liens on all Collateral which is the subject of a valid, perfected, enforceable and non-avoidable Lien on the Collateral existing on the Petition Date, which Liens shall be immediately junior and subordinate only to such existing Liens (the liens

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement.

and security interests described in paragraphs B and C shall be collectively referred to herein as the "DIP Liens");

      D.     Authorization, pursuant to section 364(c)(1) of the Bankruptcy Code, to grant to the DIP Lender, the Superpriority Claims (as defined below) against the Debtor's bankruptcy estate, with priority over all other administrative claims, subject only to the Excluded Assets;

      E.     Authorization of the Debtor to use Cash Collateral (as defined below) in which the DIP Lender has an interest;

      F.     A finding, subject to the entry of the Final Order, that (i) Richard Construction, Inc.'s ("RCI") Statement of Lien and Privilege filed of record on November 25, 2015 in the office of the Calcasieu Parish Clerk Court (Book 4748, Page 113) (the "RCI Lien") is valid, perfected, enforceable and a non-avoidable lien on and security interests in the Debtor's real and personal property located at 950 I-10 West, Westlake, Louisiana 70669 (the "RCI Collateral") arising under that certain Engineering, Procurement and Construction Contract, dated as of April 16, 2014 (as amended and restated, restated, supplemented or otherwise modified from time to time), by and between the Debtor and Richard Design Services, Inc. ("RDS"), and that certain Subcontract between RDS and RCI dated September 24, 2014 (as amended and restated, renewed, supplemented or otherwise modified from time to time), and (ii) the RCI Lien is a fourth (4th) lien priority under the Louisiana Private Works Act in the principal amount of $17,559,718.07, plus all accrued interest thereon as provided in the Subcontract (the "RCI Lien Obligations") (items (i) and (ii) are collectively, the "RCI Documents");

      G.     Authorization subject to, and only effective upon the entry of, the Final Order (as defined below) granting such relief, to prohibit the Debtor from surcharging against Collateral pursuant to section 506(c) of the Bankruptcy Code;

H.      Pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court on or prior to April 19, 2016, to consider entry of this Interim Order; and

I.      Pursuant to this Interim Order, that this Court schedule a final hearing (the "Final Hearing") on or prior to May 12, 2016, to consider entry of a final order authorizing and approving, on a final basis, all of the relief requested in the Motion and DIP Loan Documents (the "Final Order"), including authorizing the Debtor to obtain post-petition financing up to the aggregate principal amount of not more than $3 million, subject to the approval by this Court of the DIP Loan Documents (the "DIP Facility"); and

The Interim Hearing having been held by this Court and concluded on April 18, 2016, and upon the *Declaration of David Rush in Support of Chapter 11 Petition and First Day Motions*; the record made by the Debtor at the Interim Hearing and the evidence and arguments of counsel, and after due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.      Petition Date.  On April 14, 2016 (the "Petition Date"), the Debtor filed the Case with the United States Bankruptcy Court for the Southern District of Texas Houston Division (the "Court").   The Debtor is continuing in possession of its property, and operating and managing its business, as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in the Case.

2.      Jurisdiction, Venue and Statutory Predicates.  This Court has jurisdiction over the Case and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are

sections 105(a), 361, 362, 363, 364(c), 364(e) and 507 of the Bankruptcy Code; Bankruptcy

Rules 4001 and 9014; Bankruptcy Local Rule 4001-1; the Complex Chapter 11 Procedures; and

the Uniform Rules.

   3. <u>Committee Formation</u>. No official committee of unsecured creditors (a

"<u>Committee</u>") has been appointed in the Case to date.

   4. <u>Notice</u>. Notice of the Motion and DIP Credit Agreement, the relief requested

therein, and the Interim Hearing has been served by the Debtor on (i) the Office of the United

States Trustee for Region 7 (the "<u>U.S. Trustee</u>"); (ii) counsel to the DIP Lender; (iii) counsel for

RCI and RDS, (iv) the Debtor's twenty (20) largest unsecured creditors; and (v) all other known

holders of pre-petition Liens against the Debtor's Property. Under the circumstances, notice was

sent under Bankruptcy Rules 4001(b), 4001(c) and 4001(d), Bankruptcy Local Rule 4001-1 and

section 102(1) of the Bankruptcy Code in light of the emergency nature of the interim relief

requested in the Motion, and no further notice of the relief sought at the Interim Hearing and the

relief granted herein is necessary or required.

   5. <u>Necessity of Financing and Use of Cash Collateral</u>. The Debtor submits that the

DIP Facility, to be made available to the Debtor pursuant to the DIP Loan Agreement, and the

Debtor's use of Cash Collateral will allow the Debtor to administer and preserve the value of its

estate during the pendency of the Case and enable the Debtor to realize the highest and best

value for its assets through the auction and sale of its assets contemplated under the Sale Motion

and that certain Asset Purchase Agreement, dated as of April 12, 2016, by and between the

Debtor, the DIP Lender and RCI (the "<u>Sale</u>"). Entry of this Interim Order approving the DIP

Facility and the Debtor's interim use of Cash Collateral will benefit the Debtor and its estate and

creditors. Therefore, it is in the best interest of the Debtor's estate to establish the DIP Facility

contemplated by the DIP Credit Agreement and other DIP Loan Documents, and to authorize the

Debtor's use of Cash Collateral, subject to the terms and conditions in the DIP Credit Agreement

as set forth in this Interim Order.

6. <u>No Credit Available on Other Terms</u>. The Debtor is unable to obtain unsecured

credit allowable under sections 503(b)(1), 364(a) or 364(b) of the Bankruptcy Code.

7. <u>Willingness to Lend</u>. The Debtor is also unable to obtain financing from sources

other than the DIP Lender, or on more favorable terms, than those set forth in the DIP Credit

Agreement and this Interim Order.

8. <u>Business Judgment and Good Faith</u>. The terms and conditions of the DIP

Facility, as set forth in the DIP Credit Agreement, and the use of Cash Collateral, as described in

the Motion, and as all were set forth at the Interim Hearing are fair and reasonable and the entry

into the DIP Facility on the terms and conditions set forth in the DIP Credit Agreement represent

a sound, prudent exercise of the Debtor's business judgment consistent with its fiduciary duties,

and are supported by reasonably equivalent value and fair consideration. The DIP Facility and

use of the Collateral were negotiated in good faith (as that term is used in section 364(e) of the

Bankruptcy Code) and at arm's length and for fair consideration among the (i) Debtor, (ii) the

DIP Lender, and (iii) RCI. Accordingly, all of the Debtor's obligations and indebtedness arising

under, in respect of, or in connection with the DIP Facility, the DIP Credit Agreement, and the

other DIP Loan Documents, and any obligations or indebtedness owing to the DIP Lender (all of

the foregoing collectively, the "<u>DIP Obligations</u>"), shall be deemed to have been extended by the

DIP Lender in good faith (as that term is used in section 364(e) of the Bankruptcy Code), and in

express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and

shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

9.     <u>Property of the Estate</u>.  Each item of the Collateral constitutes property of the Debtor's estate.

10.     <u>Good Cause</u>.  Good and sufficient cause exists for the entry of this Interim Order. The borrowings under the DIP Facility and the Debtor's use of Cash Collateral and the other relief requested in the Motion are necessary, essential, appropriate and in the best interest of the Debtor, its estate, and its creditors, as the borrowings under the DIP Facility and access to Cash Collateral will, among other things, provide the Debtor with the liquidity necessary to fund the necessary expenses of the Case through the Termination Date, preserve and maximize the value of the Debtor's estate for the benefit of all creditors, enable the Debtor to pursue and consummate the Sale, and avoid immediate and irreparable harm to the Debtor and its estate, its creditors, and its assets which would result if the Debtor did not have access to the DIP Facility and Cash Collateral.

11.     <u>Debtor's Acknowledgments and Agreements</u>.  Without prejudice to the rights of any other party (but subject to the limitations thereon set forth in paragraphs 35 and 36 of this Interim Order with respect to the RCI Lien), the Debtor admits, stipulates, acknowledges and agrees that:

(i)     <u>Validity and Enforceability</u>. (a) RCI duly perfected the RCI Lien by, among other things, recording a Statement of Lien and Privilege on November 25, 2015, in the office of the Calcasieu Parish Clerk Court (Book 4748, Page 113); (b)  the RCI Lien is valid and enforceable by RCI against the Debtor, and (c) the RCI Lien Obligations constitute legal, valid,

binding, and non-avoidable obligations of the Debtor and are secured by valid, binding, enforceable, duly perfected liens and security interests on the RCI Collateral in fourth (4th) priority under the Louisiana Private Works Act in the amount and to the extent set forth in the RCI Lien.

(ii)     No Challenges.  (a) No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to the RCI Lien or RCI Lien Obligations exist, and no portion of the RCI Lien or RCI Lien Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Debtor and its estates have no valid claims, objections, challenges, causes of actions, or choses in action, including without limitation, Chapter 5 Actions and Claims, against RCI or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors or employees arising out of, based upon or related to the RCI Lien or RCI Lien Obligations, and (c) the Debtor irrevocably waives any right to challenge or contest the RCI Lien on the RCI Collateral or the validity or amount of the RCI Lien Obligations.

(iii)     Cash Collateral.  All of the Debtor's cash derived from the DIP Loans under the DIP Facility constitutes Cash Collateral (as defined below).  For purposes of this Interim Order, the term "Cash Collateral" includes, without limitation: (i) all deposits subject to setoff and cash arising from the collection or other conversion to cash of property of the Debtor in which the DIP Lender asserts security interests, liens or mortgages, regardless of (a) whether such security interests, liens, or mortgages existed as of the Petition Date or arose thereafter pursuant to this Interim Order, and (b) whether the property converted to cash existed as of the Petition Date or arose thereafter, and (ii) excludes all Excluded Assets.

(iv)    <u>Bridge Loans</u>.  Prior to the Petition Date, the DIP Lender and RCI (the "<u>Bridge Lenders</u>") separately entered into the Bridge Loan Documents pursuant to which the Bridge Lenders provided financing to the Debtor in the aggregate principal amount of $820,000, with the DIP Lender providing $532,500 and RCI providing $287,500 of that amount.  As of the Petition Date, the Debtor was liable to the Bridge Lenders in the aggregate amount of $820,000, plus accrued but unpaid interest, fees and expenses incurred under and in connection with the Bridge Loan Documents as provided therein (collectively, the "<u>Bridge Loan Obligations</u>").  The Bridge Loan Obligations are unsecured and are not Obligations under the DIP Loan Documents. For the avoidance of doubt, there is no "roll-up" of the Bridge Loan Obligations under this Interim Order.

Based on the foregoing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

12.    <u>Motion Granted</u>.  The Motion is granted in accordance with the terms and conditions of this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order that have not been withdrawn, waived or settled, are hereby denied and overruled. This Interim Order shall be valid, binding on all parties-in-interest, and fully effective upon entry.

13.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order will be held on May 9, 2016 at 9:00 a.m., prevailing Central Time.  The Debtor shall, on or before April 20, 2016, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order, to the parties having been given notice of the Interim Hearing and to any party which has filed prior to such date a request for notice with the Court and to counsel for the Committee.  Such notice shall constitute adequate notice of the Final Hearing, and the relief

requested by the Debtor to be approved by the Final Order, including without limitation, notice that the Debtor will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code. The notice of entry of this Interim Order shall state that any party in interest objecting to the DIP Facility, DIP Loan Documents or use of Cash Collateral on the terms and conditions set forth therein shall file a written objection with the United States Bankruptcy Court Clerk for the Southern District of Texas no later than May 4, 2016, at 4:00 p.m. prevailing Central Time, which shall be served so that the same are received on or before such date and time by: (i) King & Spalding, 1100 Louisiana, Suite 4000, Houston, Texas 77002, Attn: Mark W. Wege; (ii) counsel to the DIP Lender: Hogan Lovells US LLP, Attn: Mark Heimlich, Esq., One Tabor Center, Suite 1500, 1200 Seventeenth Street, Denver, Colorado 80202, and Hogan Lovells US LLP, Attn: Christopher R. Bryant, Esq., 875 Third Avenue, New York, New York 10022; (iii) Richard Design Services, Inc. and Richard Construction, Inc., Attn: Mike Krautz, CFO, 750 Pearl Street, Beaumont, Texas 77701; (iv) counsel to Richard Design Services, Inc. and Richard Construction, Inc.: Gable Gotwals, Attn: John Dale, 1100 ONEOK Plaza, 100 West 5th St., Tulsa, Oklahoma 74103; (v) counsel to any Committee; and (vi) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Nancy Holley.

14.     <u>Authorization of the DIP Facility and DIP Loan Documents.</u>  The Debtor is hereby authorized, pursuant to the terms of this Interim Order and the DIP Credit Agreement, to borrow funds under the DIP Facility up to an aggregate principal amount of no more than the Interim Amount Limit during the period from the date of entry of this Interim Order until the date of entry of the Final Order, in accordance with, and subject to, the terms of the DIP Loan Documents and this Interim Order. The Debtor's use of borrowings under the DIP Facility, subject to Permitted Variances (as defined below), if any, and Cash Collateral, shall be in

accordance with the purposes described herein, in the DIP Credit Agreement and the Approved Budget (as defined below).

15.     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of the Security Documents), and to accrue and add to the principal balance of the DIP Facility all fees and expenses of the DIP Lender and its counsel or other retained professionals as set forth in the DIP Credit Agreement, that may be reasonably required or necessary for the Debtor's performance of its obligations under or in connection with the DIP Facility and DIP Loan Documents, including, without limitation:

(i)     the execution, delivery and performance of the DIP Loan Documents (whether done prior to or after entry of this Interim Order);

(ii)    the execution, delivery and performance of one or more waivers, forbearances, consents or amendments to the DIP Loan Documents, in each case in such form as the Debtor and the DIP Lender may agree in writing, which do not (a) materially modify the DIP Loan Documents, (b) shorten the maturity of the extensions of credit thereunder, (c) increase the commitments of the DIP Lender as set forth in the DIP Credit Agreement (the "DIP Commitments") or the rate of interest thereunder, (d) change in a manner adverse to the Debtor or DIP Lender any Event of Default under and as defined in the DIP Credit Agreement (a "DIP Event of Default"), or add, remove or amend any covenants therein, or (e) materially and adversely affect the respective rights of the Debtor or DIP Lender as set forth in the DIP Loan Documents or this Interim Order; and

(iii)    the execution, delivery and/or performance of all other documents and acts required under or in connection with the DIP Loan Documents (whether done prior to or after entry of this Interim Order).

16.    Upon entry of this Interim Order, the DIP Loan Documents shall constitute valid, binding and enforceable obligations of the Debtor, enforceable against the Debtor in accordance with the terms thereof.  Subject to paragraphs 35 and 36 of this Interim Order, no obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be voidable, or recoverable under the Bankruptcy Code (including without limitation, under section 502(d) of the Bankruptcy Code) or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

17.    DIP Liens.  As security for the DIP Obligations, effective and perfected upon entry of this Interim Order, and without the necessity of the execution, recordation of any Security Documents, the DIP Liens are hereby granted to the DIP Lender, on all assets of the Debtor described below, which shall exclude the Excluded Assets, whether existing on the Petition Date or thereafter acquired, including, but not limited to, the following (the "Collateral"):

(i)            All of the Debtor's assets which are or may be subject to Article 9 of the Uniform Commercial Code, together with all replacements therefor, additions and accessions thereto, and proceeds (including, but without limitation, insurance proceeds) and products thereof, including, without limitation, the following (each as defined by the Uniform Commercial Code):

(a)    Accounts (including, without limitation, notes, drafts, acceptances, letters of credit, and other rights to payment);

(b)     Chattel Paper;

(c)     Commercial Tort Claims;

(d)     Deposit Accounts in which the DIP Loan proceeds are deposited or held (only to the extent of amounts advanced as DIP Loans);

(e)     Documents;

(f)     Equipment;

(g)     General Intangibles;

(h)     Goods;

(i)     Instruments;

(j)     Inventory;

(k)     Investment Property;

(l)     Letter-of-Credit Rights;

(m)     Payment Intangibles;

(n)     Software;

(o)     Supporting Obligations;

(p)     Rights as seller of Goods and rights to returned or repossessed Goods;

(q)     All existing and future leases and use agreements of personal property entered into by the Debtor as lessor with other persons as lessees, including without limitation the right to receive and collect all rentals and other monies, including security deposits, at any time payable under such leases and agreements;

(r)     All existing and future leases and use agreements of personal property entered into by the Debtor as lessee with other persons as lessors, including without

limitation the leasehold interest of the Debtor in such property, and all options to purchase such property or to extend any such lease or agreement;

      (s)     All Fixtures of the Debtor;

      (t)     All claims of the Debtor in any pending litigation and claims for any insurance proceeds;

      (u)     All records pertaining to any of the Collateral (provided that the Debtor shall be entitled to retain true and correct copies of all such records in the event that the DIP Lender at any time takes possession thereof);

      (v)     All real Property rights or interests now owned or hereafter acquired by Debtor, whether leasehold, fee or mixed, and all contingent remainders and rights of reversion;

      (w)     All (i) tradenames, trademarks, trademark registrations, trademark applications, patents, patent applications, copyrights, trade secrets, and other intellectual property of Debtor and all continuations, divisions, renewals or reissues thereof, (ii) all income, royalties, damages and payments now or hereafter due or payable with respect thereto including, without limitation, damages and payments for past or future infringements thereof, (iii) the right to sue for past, present and future infringements thereof, and (iv) all rights corresponding thereto throughout the world;

      (x)     Any and all other Property of Debtor of any kind, nature, or description whether or not identified in any one or more of the Security Documents; and

      (y)     All interest, dividends, proceeds, products, rents, royalties, issues and profits of any of the Property described above and all notes, certificates of deposit, checks

and other instruments from time to time delivered to or otherwise possessed by Lender for or on behalf of Debtor in substitution for or in addition to any of said property.

Each category of Collateral set forth above shall have the meaning set forth in the Uniform Commercial Code, it being the intention of the Debtor that the description of the Collateral set forth above be construed to include the broadest possible range of assets. Notwithstanding anything to the contrary herein, or in the DIP Credit Agreement, the Collateral shall not include any interest in the Debtor's Chapter 5 Actions and Claims, which shall be Excluded Assets, and no Lien or Superpriority Claim shall be granted by this Interim Order in the Debtor's Chapter 5 Actions and Claims.

(ii)     First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, other than with respect to the Excluded Assets, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all Collateral to the extent not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code, including, without limitation, all cash advanced as DIP Loans, all Accounts holding any funds advanced as DIP Loans (to the extent of the amount of such funds) and all products and proceeds of the DIP Loans.

(iii)     Junior Lien on Encumbered Property.  Pursuant to section 364(c)(3) of the Bankruptcy Code, other than with respect to the Excluded Assets, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all Collateral subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent

permitted by section 546(b) of the Bankruptcy Code, which security interest and lien in favor of the DIP Lender shall be immediately junior and subordinate only to such other Liens;

(iv)     Liens Senior to Certain Other Liens.  The DIP Liens granted to the DIP Lender shall be senior to and shall not be subject or subordinate to (1) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (2) subject to applicable law, any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor other than as expressly permitted under the DIP Credit Agreement.

18.     DIP Lender Superpriority Claims.    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations, other than with respect to the Excluded Assets, shall constitute allowed claims against the Debtor with priority over all administrative expenses (other than any fees arising under 28 U.C.S. §1930), diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (collectively, the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment or otherwise, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof.

19.     Protection of DIP Lender's Rights.    So long as there are any borrowings or amounts outstanding under the DIP Facility (other than contingent indemnity obligations), the

DIP Lender has a DIP Commitment outstanding under the DIP Credit Agreement or any other DIP Obligations are outstanding, (i) RCI shall take no action to foreclose upon or recover in connection with the RCI Lien or RCI Lien Obligations, or any other liens granted pursuant to any other agreements or operation of law, or otherwise exercise remedies against any of the RCI Collateral (except as permitted under paragraph 38 of this Interim Order in connection with a credit bid for the Purchased Assets), (ii) RCI shall not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the RCI Collateral or Collateral except as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date, and (iii) RCI shall not seek to obtain adequate protection from the Debtor. Nothing herein shall permit RCI to take any action in violation of the Bankruptcy Code or other applicable law or that is contrary to this Interim Order or the DIP Loan Documents. Notwithstanding the foregoing, nothing herein shall affect RCI's rights with respect to the Bridge Loan Obligations or its indirect participation in the DIP Facility.

20.     Upon the occurrence of a DIP Event of Default, the DIP Lender, as its option, may terminate the Commitments and declare all Obligations to be immediately due and payable in accordance with Section 7.2 of the DIP Credit Agreement. Pursuant to Section 7.3 of the DIP Credit Agreement, the DIP Lender shall provide five (5) Business Days' written notice of a DIP Event of Default to counsel for the Debtor, counsel for RCI, counsel for any Committee, and the U.S. Trustee (the "DIP Default Notice").

21.     Upon the occurrence of a Cash Collateral Event of Default (as defined below), the Debtor shall be prohibited from using any Cash Collateral. Promptly following the occurrence

of a Cash Collateral Event of Default, the DIP Lender shall deliver a notice thereof to counsel for the Debtor, counsel for RCI, counsel for any Committee, and the U.S. Trustee. For purposes of this Interim Order, a "Cash Collateral Event of Default" shall occur with respect to the Debtor's use of Cash Collateral if (a) the Debtor fails to perform any of its obligations in accordance with the terms of this Interim Order, including, without limitation, the Debtor's failure to use Cash Collateral in compliance with an Approved Budget (subject to Permitted Variances, if any), or to provide the information or access as required herein and in the DIP Loan Documents, (b) any representation or warranty made by the Debtor in the DIP Credit Agreement or this Interim Order, or any other documents or agreements delivered or entered into in connection with the DIP Facility, proves to have been false or misleading in any respect as of the time made or given (including by omission of material information or fact necessary to make such representation, warranty or statement not materially misleading), or (c) a DIP Event of Default shall have occurred.

22.     Limitation on Charging Expenses Against Collateral. Subject to and effective only upon entry of the Final Order granting such relief, no expenses of administration of the Case shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender or RCI, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender and/or RCI.

23.     Access to Collateral. The DIP Lender and RCI and their respective experts and advisors shall be given reasonable access to the Collateral for purposes of monitoring and valuing the Collateral.

24.     <u>Information</u>.   The Debtor shall provide the DIP Lender and RCI with all inspection rights and reports (in addition to those required by this Interim Order) to the extent required under the DIP Loan Documents or RCI Documents, or as otherwise reasonably requested by the DIP Lender or RCI.

25.     <u>Reservation of Rights</u>.   Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity, to the DIP Lender, including, without limitation, rights of setoff or as otherwise permitted by law (or the right of the Debtor to contest such assertion).

26.     <u>Perfection of DIP Liens</u>.   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the Debtor to grant the liens and security interests to the DIP Lender contemplated by the DIP Loan Documents and this Interim Order.

27.     The DIP Liens granted pursuant to this Interim Order shall constitute valid and duly perfected security interests and liens (subject until entry of the Final Order to the priorities set forth herein), and the DIP Lender shall <u>not</u> be required to file, record or serve any Security Documents which otherwise may be required under federal, state or local law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the DIP Liens shall in no way affect the validity, perfection or priority of such liens.  The DIP Lender is hereby authorized, but not required, to file or record any or all of Security Documents in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file or

record any Security Documents or otherwise confirm perfection of the liens and security interests granted hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or subordination, at the time and as of the date of entry of this Interim Order.  Upon the request of the DIP Lender, the Debtor, without any further consent of any party, is authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender, to further validate, perfect, preserve, defend and/or enforce the DIP Liens.  The Debtor shall at all times keep all Cash Collateral in an account segregated from its other cash and property and such segregated account shall not be subject to any Liens or the control of any Person other than the DIP Lender.

28.     A certified copy of this Interim Order may be filed with or recorded in filing or recording offices in addition to or in lieu of the Security Documents, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and recording.

29.     <u>Use of DIP Facility Proceeds and Cash Collateral; Budget</u>.  Subject in all respects to the terms and conditions set forth herein and in Section 2.7 of the DIP Credit Agreement, the Debtor is authorized to use the proceeds of the DIP Facility and the Cash Collateral solely for the purposes set forth in the DIP Loan Documents and in the amounts set forth in the initial Approved Budget attached hereto as <u>Exhibit A</u> (and each subsequent approval by the DIP Lender in accordance with the provisions of the DIP Credit Agreement, the "<u>Approved Budget</u>"), subject to Permitted Variances and Permitted Variance Exceptions, if any, through the earliest to occur of: (a) the date of entry of the Final Order and (b) the occurrence of a DIP Event of Default or Cash Collateral Event of Default.

30.    Budget.  The Borrower shall submit Proposed Budgets to the Lender for approval in accordance with Section 2.7 of the DIP Credit Agreement.  Except as expressly set forth herein, nothing in the Approved Budget or this Interim Order shall be deemed or construed as (a) a finding or admission as to the validity of any claim relating to a budgeted amount, (b) an agreement or promise by any party in interest to pay any such budgeted claim, or (c) a waiver of the rights of any party in interest to contest any such claim.  Furthermore, nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, nor authorize the use by the Debtor of any proceeds from any such disposition of assets.  The Approved Budget may be amended or modified in writing from time to time in accordance with Section 2.7 of the DIP Credit Agreement.

31.    Marshalling.   Upon entry of a Final Order, in no event shall the DIP Lender or RCI be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or RCI Collateral, respectively.

32.    Section 552(b).  The DIP Lender is entitled to all of the rights and benefits of section 552(b)(1) of the Bankruptcy Code and the "equities of the case" exception therein shall not apply.

33.    Proofs of Claim.  The DIP Lender, RCI, and the Bridge Lenders may, but shall not be required to file proofs of claim in the Case or any successor Case and any order entered by the Court in relation to the establishment of procedures to file proofs or a bar date in any of the Case or any successor Case shall, or shall be deemed to, so provide.

34.    Preservation of Rights Granted Under this Interim Order.

(i)     Except as otherwise set forth herein, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lender, shall be

granted or allowed on or after the date of entry of this Interim Order while any portion of the DIP Facility, the DIP Commitments, or the DIP Obligations remain outstanding, and the DIP Liens and Superpriority Claims shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien, security interest, or claim, whether under section 364(d) of the Bankruptcy Code or otherwise.

(ii)    To the extent permitted by applicable law, if an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Liens and Superpriority Claims pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been paid and satisfied in full and that such DIP Liens and Superpriority Claims shall, notwithstanding such dismissal, remain binding on the Debtor all parties in interest and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to and provided for in the DIP Loan Documents and in this Interim Order.

(iii)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations incurred prior to the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien, claim or priority authorized or created hereby (including the RCI Lien) or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations incurred by the Debtor prior to the effective date of such reversal, stay,

modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and RCI shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and DIP Obligations.

(iv)    Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, Superpriority Claims and all other rights and remedies of the DIP Lender and RCI granted by this Interim Order and the DIP Documents, as applicable, shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Case, or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization or liquidation in the Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, Superpriority Claims and all other rights and remedies of the DIP Lenders and RCI granted pursuant to this Interim Order and the DIP Documents, as applicable, shall continue in full force and effect.

35.    **Effect of Stipulations on Third Parties.**  **The agreements, stipulations and findings contained in this Interim Order shall be binding upon all parties in interest, including, but not limited to, the Debtor and the Committee, if any, except to the extent that (a) a party in interest with standing (other than the Debtor) and who has not agreed to contest the RCI Lien under a separate agreement for so long as RCI is a purchaser for the Sale, has timely filed an adversary proceeding or contested matter asserting any claims or causes of action against RCI, objecting to the RCI Lien or the RCI Lien Obligations, or**

challenging any of the admissions set forth in <u>paragraph 11(i)-(ii)</u> of this Interim Order (a "<u>Challenge</u>") by no later than 40 days from the date of entry of this Interim Order (unless the Court orders otherwise, including ordering otherwise at the Final Hearing) (the "<u>Challenge Period</u>"), <u>and</u> (b) the Court rules in favor of the plaintiff or movant in any such timely-filed Challenge and enters a final order with respect thereto (a "<u>Successful Challenge</u>"). If no such Challenge is timely commenced within the Challenge Period, (v) all of the admissions in <u>paragraph 11(i)-(ii)</u> of this Interim Order shall be binding and preclusive on the Debtor and its estate and its creditors, the Committee (if any), equity holders, and all other parties in interest, (w) the RCI  Lien Obligations shall constitute allowed claims for all purposes in the Case and any subsequent chapter 7 case, (x) RCI's respective security interests in and liens on the RCI Collateral shall be deemed legal, valid, binding, perfected and otherwise non-avoidable, and (y) the RCI Lien Obligations and the RCI Lien on the RCI Collateral shall not be subject to subordination, counterclaims, set-off, defense, avoidance or any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estates, including, without limitation, any successor thereto. If any such Challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in <u>paragraph 11(i)-(ii)</u> of this Interim Order shall nonetheless remain binding and preclusive on the Debtor and its estate and its creditors, the Committee (if any), equity holders, and all other parties in interest, except to the extent that such findings or admissions were expressly and successfully disputed in a Successful Challenge.

36.     To the extent a Successful Challenge expressly affects the validity, enforceability, extent, perfection or priority of the RCI Lien, subject to the final order

underlying such Successful Challenge, the agreements, stipulations and findings contained in **paragraph 11** of this Interim Order shall not be binding or preclusive on the Debtor, its estate, its creditors, the Committee (if any), equity holders, or any other parties in interest. Nothing in this Interim Order confers on any Entity (as defined in the Bankruptcy Code), other than a Committee, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including without limitation, claims and defenses with respect to the RCI Obligations.  The Debtor, the DIP Lender and RCI stipulate that a Committee shall have standing to pursue a challenge under paragraphs 35 and 36.

37.     <u>Limitation on Use of DIP Facility Proceeds and Cash Collateral</u>.  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings under the DIP Facility, Cash Collateral or Collateral may be used to (a) object, contest or raise any defense to the amount, validity, perfection, priority, extent or enforceability of any obligation under the DIP Loan Documents, RCI Documents, or Bridge Loan Documents, or the liens or claims granted under this Interim Order, DIP Credit Agreement, DIP Loan Documents, or RCI Documents, (b) assert claims and defenses or any other causes of action against the DIP Lender, RCI, the Bridge Loan Lenders, or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lender's or RCI's assertion, enforcement or realization on the Collateral in accordance with the DIP Loan Documents, RCI Documents, or this Interim Order, (d) seek to modify any of the rights granted to the DIP Lender, RCI, or Bridge Loan Lenders hereunder or under the DIP Loan Documents, RCI Documents, or Bridge Loan Agreements in this Case without such respective parties' prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date or any professional fees and disbursements incurred in connection with such claims or any of the actions set forth in the

foregoing clauses (a) through (d) unless in each case such payments are (i) approved by an order of this Court and (ii) in accordance with the DIP Credit Agreement, and the Approved Budget, unless otherwise approved by the DIP Lender and RCI in their sole discretion.

38.    <u>Right to Credit Bid</u>.  The DIP Lender and RCI, as applicable, shall have the right to credit bid any or all of the DIP Obligations, DIP Liens, RCI Lien and RCI Lien Obligations, and the DIP Lender shall have the right to apply any or all of its Superpriority Claims toward the satisfaction of the purchase price for the Purchased Assets, and both the DIP Lender and RCI shall have standing with respect to all aspects of any sale of the Purchased Assets or hearings related thereto.  In the event the DIP Lender and RCI, as applicable, is not the successful bidder in any sale of the Purchased Assets, the proceeds of any sale of the Purchased Assets shall be applied first to the repayment in full of the DIP Facility and then to any other sums due and owing to the DIP Lender and RCI, as applicable, under the Sale Documents, and the order approving the sale to such successful bidder shall be consistent with the foregoing.

39.    <u>Reimbursement of Costs and Expenses</u>.  The Debtor shall reimburse (subject to paragraph 40 of this Interim Order) the DIP Lender for its fees, costs, charges and expenses incurred in connection with the DIP Facility, DIP Loan Documents, the Case and Sale (including, without limitation, its attorneys' and financial advisors' fees and expenses), whether incurred prior to or after the Petition Date and in connection with (i) the negotiation and preparation of the DIP Loan Documents, Financing Orders, Sale Documents, Sale Procedures Order, or Sale Order, or any amendments or modifications thereto, (ii) the preparation of any motions, orders or other pleadings in the Case or related to the Sale, (iii) responding to any requests for waivers or forbearances with respect to the Obligations, (iv) the administration of the DIP Loan Documents and Sale Documents and consummation of the transactions

contemplated hereby and thereby, including the Sale, (v) any action taken to perfect or maintain the perfection or priority of any Liens with respect to any of the Collateral, including any intangibles taxes, documentary stamp taxes or other taxes or costs which may be payable in connection therewith, (vi) any inspections or audits conducted with respect to the Debtor's books and records or any of the Collateral, (vii) any effort to verify, protect, preserve, or restore any of the Collateral or to collect, sell, liquidate or otherwise dispose of or realize upon any of the Collateral, (viii) any litigation, contest, dispute, suit, proceeding or action (whether instituted by or against the DIP Lender, the Debtor or any other Person) in any way arising out of or relating to any of the Collateral or the validity, perfection or priority of any Liens thereon, or to any of the DIP Loan Documents or the validity, allowance or amount of any of the Obligations, (ix) the protection or enforcement of any rights or remedies of the DIP Lender, and (x) any other action taken by the DIP Lender to enforce any of its rights, remedies, or powers. A copy of any invoice submitted by the DIP Lender to the Debtor shall also be delivered simultaneously to the Debtor, counsel to RCI, the U.S. Trustee and counsel to any Committee (the "Fee Notice"). None of such costs, fees, charges and expenses shall be subject to Court approval or required to be recorded or maintained in accordance with the United States Trustee guidelines relating to compensation and reimbursement of expenses and no recipient of any such payment shall be required to file any interim or final fee application with the Court.

40.     Subject to the Debtor, any Committee, or the U.S. Trustee filing a written objection with this Court to any such fees and expenses within five (5) days after receipt of the Fee Notice, all amounts chargeable to the Debtor under this Section shall constitute DIP Obligations that are secured by Liens on all of the Collateral and Superpriority Claims of the DIP Lender, and the amounts that become due and owing prior to the maturity of the DIP Loans shall

be automatically added to the principal amount of the DIP Loan (and begin to bear interest). To the extent a timely filed objection is filed by the Debtor, any Committee, or the U.S. Trustee, the Debtor (a) shall apply such portion of the fees and expenses to which no objection is interposed and (b) shall apply any remaining fees and expenses as ordered by the Court (or upon withdrawal or resolution of the objection).

41.    Order Governs.  In the event of any inconsistency between the provisions of this Interim Order, the Motion, and the DIP Loan Documents, the provisions of this Interim Order shall govern and control.

42.    Enforceability. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

43.    Binding Effect; Successors and Assigns.  The DIP Loan Documents and the provisions of this Interim Order, including, subject to entry of the Final Order, all agreements, stipulations and findings herein shall be binding upon all parties in interest in the Case, including, without limitation, the DIP Lender, RCI, any Committee and the Debtor and their respective successors and assigns (including any estate representative or any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor's estate) and shall inure to the benefit of the DIP Lender, RCI and the Debtor and their respective successors and assigns; provided, however, that the DIP Lender shall have no obligation to permit the use of Cash Collateral or extend any financing, as the case may be, to any trustee or similar responsible person appointed

for the estate of the Debtor.  Notwithstanding anything to the contrary in this Interim Order, any Committee shall, to the extent such Committee holds a right to any portion of the Carve-Out, have the right to investigate any lien claims of RCI pursuant to, and subject to the terms of, paragraphs 35 and 36 above, and the reasonable costs of such investigation shall not be precluded from inclusion in the Committee's interest in the Carve-Out, if any.

44.    <u>Exculpation</u>.  Subject to the entry of the Final Order, none of the DIP Loan Documents, or any other documents related to the transactions contemplated thereby, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender, RCI, or the Bridge Loan Lenders, any liability for any claims arising from or in connection with the pre-petition or post-petition activities of the Debtor in the operation of its business, the sale and auction process, or its restructuring and/or liquidation efforts.

45.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to enforce the provisions of the DIP Loan Documents and this Interim Order and the rights of the parties set forth therein and herein, and this retention of jurisdiction shall survive the confirmation and consummation of any Chapter 11 plan notwithstanding the terms or provisions of any such Chapter 11 plan or order confirming such Chapter 11 plan or any order dismissing or closing the Case.

Signed:

April 19, 2016

_____
Marvin Isgur
United States Bankruptcy Judge

**EXHIBIT A**

**APPROVED BUDGET**

**Juniper GTL LLC**
**Cash Forecast**
**As of 4/14/16**
**in $000's**

Confirmation & Sale Close

| | Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Ch.11 | | | | | | | | | | | Confirmation & Sale Close | |
| Week Ending (Sunday) | | Forecast 4/17/16 | Forecast 4/24/16 | Forecast 5/1/16 | Forecast 5/8/16 | Forecast 5/15/16 | Forecast 5/22/16 | Forecast 5/29/16 | Forecast 6/5/16 | Forecast 6/12/16 | Forecast 6/19/16 | Forecast 6/26/16 | Forecast 7/3/16 | Forecast 7/10/16 |
| Beginning Cash Balance | | $ 48 | $ 19 | $ 829 | $ 601 | $ 549 | $ 1,342 | $ 1,216 | $ 1,075 | $ 857 | $ 1,676 | $ 1,458 | $ 1,350 | $ 6,617 |
| **Receipts** | | | | | | | | | | | | | | |
| Debtor-in-Possession Funding | | $ - | $ 1,200 | $ - | $ - | $ 900 | $ - | $ - | $ - | $ 900 | $ - | $ - | $ - | $ - |
| Sale Proceeds | | - | - | - | - | - | - | - | - | - | - | - | 6,484 | - |
| **Total Receipts** | | $ - | $ 1,200 | $ - | $ - | $ 900 | $ - | $ - | $ - | $ 900 | $ - | $ - | $ 6,484 | $ - |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Employee Wages & Benefits | | $ 9 | $ 9 | $ 12 | $ 9 | $ 18 | $ 3 | $ 18 | $ 9 | $ 18 | $ 3 | $ 18 | $ 14 | $ - |
| Secondee Expenses | | - | 98 | 74 | - | 74 | - | - | 74 | - | 74 | - | - | - |
| Plant Expenses | | 1 | 1 | 1 | 1 | - | 1 | 1 | 1 | - | 1 | 2 | - | - |
| Security Services | | 10 | 3 | 20 | 3 | 1 | 3 | - | 3 | 1 | 3 | - | - | - |
| Utilities | | - | 1 | - | 3 | 15 | - | 15 | 3 | 1 | 1 | 15 | - | - |
| Equipment Rentals | | - | 3 | - | 3 | - | 3 | - | 3 | - | 3 | - | - | - |
| Land Lease | | 1 | 54 | 6 | - | - | - | 6 | - | 6 | - | 6 | - | - |
| Preservation Program | | - | 6 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | - | - |
| Other | | - | 15 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 5 | 5 | - | - |
| Taxes & Fees | | - | - | - | - | - | - | - | - | - | - | - | 100 | 207 |
| **Total Operating Disbursements** | | $ 21 | $ 190 | $ 128 | $ 27 | $ 108 | $ 18 | $ 55 | $ 100 | $ 34 | $ 88 | $ 45 | $ 114 | $ 207 |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Insurance Costs | | $ - | $ 157 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 51 | $ 984 | $ - |
| Retained Professionals | | 9 | 39 | 85 | 10 | - | 108 | 85 | 119 | 21 | 130 | - | - | 1,038 |
| Ordinary Course Professionals | | - | 4 | 15 | 15 | - | - | - | - | 25 | - | 11 | - | - |
| U.S. Trustee Fee and Trust | | - | - | - | - | - | - | - | - | - | - | - | 120 | - |
| **Total Non-Operating Disbursements** | | $ 9 | $ 200 | $ 100 | $ 25 | $ - | $ 108 | $ 85 | $ 119 | $ 46 | $ 130 | $ 62 | $ 1,104 | $ 1,038 |
| **Total Disbursements** | | $ 29 | $ 390 | $ 228 | $ 52 | $ 108 | $ 126 | $ 141 | $ 219 | $ 80 | $ 218 | $ 108 | $ 1,217 | $ 1,244 |
| **Ending Cash Balance** | | $ 19 | $ 829 | $ 601 | $ 549 | $ 1,342 | $ 1,216 | $ 1,075 | $ 857 | $ 1,676 | $ 1,458 | $ 1,350 | $ 6,617 | $ 5,373 |
| Unencumbered Funds (Hedge Proceeds) | | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 | $ 1,475 |

Draft – Subject to Change
Privileged and Confidential